# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

KEITH BRUCE,              )
         #289134,         )
                     )   CIVIL ACTION NO. 9:09-1383-PMD-BM
           Petitioner,   )
                     )
v.                        )
                     )   **REPORT AND RECOMMENDATION**
ELAINE ROBINSON, WARDEN,  )
                     )
          Respondent.  )
_____)

      This is a <u>pro se</u> Petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on May 26, 2009.[1]  The Respondent filed a return and motion for summary judgment on September 2, 2009. As the Petitioner is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered by the Court on September 4, 2009, advising Petitioner of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Petitioner was specifically advised that if he failed to respond adequately, the Respondent's motion may be granted, thereby ending his case.

      Petitioner thereafter filed a memorandum in opposition to the motion for summary judgment on October 8, 2009.   This matter is now before the Court for disposition.[2]

---

[1]Since the delivery date to the mail room does not appear on the envelope, the undersigned has used the date the Petitioner signed the application.  <u>Houston v. Lack</u>, 487 U.S. 266 (1988).

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C.  The Respondent has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## Procedural History

Petitioner was indicted in January 2002 for distribution of marijuana [Indictment No. 02-GS-37-0027] and distribution of marijuana within proximity of a school [Indictment No. 02-GS-37-0028] (R.pp. 170-173). Petitioner was represented on these charges by E. Delane Rosemond, Esquire, and after a trial by jury on November 21, 2002, was found guilty as charged. (R.pp. 1-168); see also Sentencing Sheets. The trial judge sentenced the Petitioner to fifteen (15) years for distribution and ten (10) years, concurrent, for the proximity charge. (R.p. 168).

Petitioner's trial counsel filed a timely appeal on behalf of the Petitioner and continued to represent Petitioner on appeal, raising the following direct appeal issue:

1. Whether the trial court erred in denying Appellant's Motion for Directed Verdict where the State's evidence merely raised a suspicion that the Appellant was guilty of the offense charged?

See Brief, p. 2.

On March 30, 2004, the South Carolina Court of Appeals remanded the case to the trial court to determine whether the indictments had been "true-billed", since they reflected the grand jury foreman's signature and date but did not indicate the result. State v. Bruce, Unpub. Op. No. 2004-UP-223 (S.C.Ct.App. 2004). A hearing was conducted before the Honorable J.C. Nicholson, and on December 3, 2004, Judge Nicholson filed an order finding that the indictments had been properly "true-billed". See Order filed on December 3, 2004.

On May 16, 2005, the South Carolina Court of Appeals affirmed Petitioner's convictions and sentences. See State v. Bruce, No. 2005-UP-333 (S.C.Ct.App. filed May 15, 2005). The Remittitur was issued on June 1, 2005. See Remittitur dated June 1, 2005.

Petitioner then filed an Application for Post-Conviction Relief ("APCR") in state



2

circuit court on August 1, 2005; <u>Bruce v. State of South Carolina</u>, 05-CP-37-0641 (R.pp. 174-197); in which he raised the following issue:

Ineffective assistance of counsel

Issue - Counsel was ineffective for failure to interview, and call applicant's defense witness to the trial by jury.

(R.pp. 176, 181).

An evidentiary hearing was held on May 21, 2007, at which Petitioner was present and represented by Jennifer Coyle, Esquire. (R.pp. 202-283). At this hearing, Petitioner's claims were expanded to include ineffective assistance of counsel for failure to object to the Solicitor's vouching and ineffective assistance of counsel for failure to object to the defective indictment and allegedly perjured testimony during the hearing concerning the indictment. The PCR judge entered a written order on July 10, 2007, denying the petition in its entirety. (R.pp. 284-294).

The Petitioner timely filed a notice of appeal. Petitioner was represented in his APCR appeal by Assistant Appellate Defender Katherine H. Hudgins, of the South Carolina Division of Appellate Defense, who filed a <u>Johnson</u>[3] petition seeking to be relieved and raising the following issue:

Did the PCR judge err in refusing to find trial counsel ineffective for failing to call petitioner's girlfriend as a witness who was present at the time of the alleged transaction and would have testified that petitioner did not sell or give marijuana to the confidential informant?

<u>See</u> Petition, p. 2.

Pursuant to <u>Johnson</u>, Petitioner filed a <u>pro se</u> responsive pleading dated July 8, 2008, in which he

---

[3]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see also</u> <u>Anders v. California</u>,386 U.S. 738, 744 (1967).



raised the following issues:

> Issue 1: Did the PCR Judge err in refusing to find trial counsel ineffective for failing to call Petitioners girlfriend as a witness, who was present at the time of the alleged transaction and would have testified that Petitioner did not sell or give Marijuana to the Confidential informant and would have directly contradicted the sole testimony of the CI that her kids were there, and the Petitioner called the CI to the porch?

> Issue 2: Did the PCR Judge err, in refusing to find trial counsel ineffective for failing to object to prosecutors vouching and bolstering the credibility of the States witness, where evidence was not overwhelming against Petitioner?

> Issue 3: Did the PCR Judge err, in refusing to find trial counsel ineffective for failing to object to material perjured testimony offered by Officer (Sgt. Jenkins), to Grand Jury during Subject Matter Jurisdiction Hearing, to obtain an indictment for Petitioner?

See Pro Se Petition, p. 2.

On January 8, 2009, the Supreme Court of South Carolina granted counsel's request to be relieved and denied the petition. See Order, Bruce v. State (dated January 8, 2009). The Remittitur was issued on January 26, 2009.

In his Petition for writ of habeas corpus filed in United States District Court, Petitioner raises the following claims:

> **Ground One**: Ineffective Assistance of Counsel, failure to call defense witness. 6th and 14th Amendment.

> Trial Counsel was ineffective for failing to call Petitioners girlfriend as a witness, who was present at the time of the alleged transaction, and would have directly contradicted the sole testimony of the Confidential Informant.

> **Ground Two:** Ineffective Assistance of Counsel. Counsels failure to object to Prosecutors vouching of the credibility of a State's witness. 6th and 14th Amendments.

> Prosecutor was vouching, bolstering and arousing the Jurors passion throughout trial, and closing arguments of the States primary sole witness, and trial counsel failed to object each time.

> **Ground Three:** Ineffective Assistance of Counsel, 6th and 14th Amendment

4



Violation.

Counsel failed to object, and pay attention, to a defective, no bill, or true bill indictment, prior to trial; thus, failed to object to material perjured testimony offered by officer (Sgt. Steve Jenkins) to Grand Jury during subject matter jurisdiction hearing, to obtain an indictment for Petitioner.

<u>See</u> Petition pp. 6-9.

## **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

## **I.**

Petitioner' arguments that his counsel was ineffective because he failed to call a witness, failed to object to the Solicitor's vouching for a witness, and failed to object to a defective indictment and object to allegedly perjured testimony at the hearing concerning the indictment were all raised by Petitioner in his original APCR and addressed by the PCR Judge in his order of dismissal. (R.pp. 174-197, 205, 223-229, 284-294). However, the Respondent contends that these issues are all procedurally barred from consideration by this Court since they were reviewed on

5



appeal pursuant to a Johnson review under a "no merit" procedure by the state supreme court.

.           Pursuant to Johnson, counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the Petitioner; and after providing the Petitioner with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. See Johnson v. State, supra; Anders v. California, supra. Respondent argues that, since PCR appellate counsel filed a Johnson brief which was reviewed on that basis by the state supreme court, these claims are procedurally barred for failure to exhaust. The undersigned agrees that, if the merits of these issues were not reached by the state appellate court, these issues are procedurally barred from this Court's review. Coleman v. Thompson, 501 U.S. 722, 750 (1991); see discussion, infra. However, neither party cites to any controlling precedent in this circuit addressing whether issues preserved at the PCR level and raised in a Johnson petition and/or pro se appellate brief are deemed to have been considered and dismissed on the merits by the state appellate court.

Some other courts have held that an issue *not* presented in an Anders brief or in a pro se brief has not been reviewed on the merits.[4]  See Jorge v. United States, 818 F.Supp. 55, 57 (S.D.N.Y. 1993)["Having been thus placed in the possession of all of the facts relating to these claims, it is not sufficient for [Petitioner] to justify a failure to raise these claims on direct appeal merely because his appellate counsel filed an Anders brief because that counsel did nothing to prevent [Petitioner] from filing his pro se brief."]; Basnight v. Keane, No. 99-4826, 2000 WL

---

[4]The procedures set forth in Anders are followed in petitions filed under Johnson.  See Johnson v. State, supra.  Therefore, for purposes of this Report and Recommendation, the standard discussed is the same.



1100331 at * 4 (E.D.N.Y. Aug. 1, 2000); but cf. Greene v. Bartlett, 213 Fed.Appx. 597, 599 n. 2 (9th Cir. 2006)["Our holding here is limited to circumstance where, as here, the state court is not required to fully examine the record for error.... We do not reach the question whether federal claims are exhausted by appending prior pleadings to the appeal when the state court is required to engage in an independent review of the entire record, as when counsel seeks to withdraw and submits an *Anders* brief. (Citations omitted)"]. Of course, here these issues *were* presented in the Johnson appellate briefs. Further, the United States Supreme Court has held that the Anders review procedure can be varied by the states as long as the procedures applied adequately safeguard a defendant's rights; Smith v. Robbins, 528 U.S. 259, 272-273 (2000); and in State v. McKennedy, 559 S.E.2d 850 (S.C. 2002), the South Carolina Supreme Court held that claims presented in an Anders brief were presented on the merits for purposes of federal habeas review. McKennedy, 559 S.E.2d at 854-855. Cf. Washington v. Rushton, No. 05-2394, 2006 WL 2050582 at * 2 (D.S.C. July 13, 2006). Here, as noted, one of the issues was presented by counsel in the Johnson brief, and all of the issues were then presented by the Petitioner in the pro se appellate brief.

Recently, the South Carolina Supreme Court held in another case that a decision by the South Carolina Court of Appeals dismissing an appeal after conducting a review pursuant to Anders is not a decision on the merits. See State v. Lyles, 673 S.E.2d 811 (S.C. 2009). That decision did not, however, discuss or even reference the Court's earlier opinion in McKennedy. Therefore, in light of Petitioner's pro se status, and since there appears to be no clear controlling precedent on this issue, out of an abundance of caution the undersigned has considered Petitioner's claims of ineffective assistance of counsel on the merits.



## II.

As noted, these issues were all raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Bruce v. State of South Carolina, No. 05-CP-37-641.

Specifically, the PCR judge found that: 1) Petitioner testified his counsel was ineffective because he failed to investigate, call witnesses and develop a defense on his behalf; 2) Petitioner testified that he was arrested for selling dope to a confidential informant, Robby Anderson; 3) Petitioner testified that there was a videotape but that the tape does not show he or the confidential informant engaged in any illegal transaction; 4) Petitioner testified that his wife [Mrs. Bruce], who was his girlfriend at the time, wanted to testify at his trial; 5) Petitioner stated that Mrs. Bruce would not tell his counsel what she would say on the stand and his counsel refused to let her testify; 6) Petitioner testified that his counsel did a good job of discrediting the confidential informant on cross-examination; 7) Petitioner testified that there was another witness, Ray Hunter, who was available to testify, but that counsel did not call him; 8) Petitioner testified that Hunter was present at the scene of the incident for a little while but not the whole time; 9) Petitioner stated that once Hunter left, Petitioner, his girlfriend and the confidential informant were the only people at her house; 10) Petitioner stated that the video did not show a drug transaction; 11) Petitioner stated that the audio was in poor condition but that it was introduced into evidence in its entirety; 12) Petitioner testified that the confidential informant testified that Petitioner called him to the front porch, which was out of the video range; 13) Petitioner testified that this was not true and that he never called the



confidential informant to the front porch; 14) Petitioner testified that his counsel should have caught this discrepancy and used it to impeach the confidential informant; 15) in addition, Petitioner testified that the videotape was not produced by the state until his preliminary hearing; 16) Petitioner testified that neither the audio nor video revealed any conversation about drugs; 17) Petitioner testified that he and the confidential informant were on the front porch showing off their muscles, flexing, and bumping chests; 18) Petitioner testified that the confidential informant testified that Petitioner was present and that there were children present; 19) Petitioner testified that Sergeant Steven B. Jenkins testified at the trial to confirm the confidential informant's testimony; 20) Petitioner testified that Jenkins had no independent knowledge of what transpired; 21) Petitioner testified that Mrs. Bruce was on the porch the whole time and could testify that he did not call the confidential informant over to the house; 22) he further stated that Mrs. Bruce would have been able to refute a lot of the confidential informant's testimony, including the fact that no children were at the house; 23) Petitioner testified that he was prejudiced because his wife did not testify; 24) Petitioner testified that Mrs. Bruce was present at the courthouse throughout the trial; 25) Petitioner testified that his counsel failed to interview witnesses and investigate his case; 26) Petitioner testified that he and Mrs. Bruce went to counsel's office on at least one occasion; 27) Petitioner testified that counsel did not seem too interested in what Mrs. Bruce had to say; 28) Petitioner testified that his counsel acted like he had the case in hand and thought he would win it by effectively attacking the confidential informant's credibility; 29) Petitioner testified that the Solicitor improperly vouched for the confidential informant's testimony; 30) Petitioner testified that the Solicitor stated that the confidential informant was trying to change his life and had no motive to lie; 31) Petitioner stated that the Solicitor should not have injected her opinion and that, once she did, his counsel should have objected; 32) Petitioner



testified that Hunter could have sold drugs to the confidential informant; 33) Petitioner testified that there was no evidence to support the Solicitor's statements that the confidential informant was telling the truth; 34) Petitioner further testified that there was no proof that the police properly searched the confidential informant; 35) Petitioner stated that the search was not conducted on tape; 36) Petitioner testified that the indictments were defective because they were not properly presented to the grand jury and that his counsel failed to object to the court's lack of subject matter jurisdiction;

37) Mrs. Bruce testified that she is currently married to the Petitioner and that she was dating and living with the Petitioner at the time of this incident; 38) Mrs. Bruce testified that she, the Petitioner, and Hunter were at the house; 39) she testified that the confidential informant came to the house, that he was known in the community, and that she knew him prior to that day; 40) she testified that she had no knowledge of the confidential informant being a drug dealer or user; 41) she testified that the Petitioner never called the confidential informant to the porch that day; 42) she testified that she had mopped the floors that day and that all of them were on the porch while the floors dried; 43) she testified that the Petitioner and the confidential informant were bumping chests and flexing for each other; 44) she testified that the police drove by and the confidential informant left shortly thereafter; 45) she testified that she never saw Petitioner give drugs to the confidential informant or buy drugs from the confidential informant; 46) she testified that she was present during the entire time and she stated that nobody entered the house; 47) she testified that she went to counsel's office with the Petitioner and told him what she saw; 48) she testified that counsel told her that she would not make a good witness in the eyes of the jury since she and the Petitioner were dating; 49) she testified that she asked counsel if she could testify on the day of the trial, but he would not let her; 50) she testified that she was present during the confidential informant's testimony and he was wrong



when he said that Petitioner called him to the porch; 51) she also testified that the confidential informant was wrong that the children were present because there were in school;

52) Petitioner's counsel testified that he met with Petitioner several times; 53) in addition, counsel testified that he spoke with Petitioner on at least three occasions when Mrs. Bruce was present; 54) he stated that they discussed the evidence the state had against Petitioner, the charges against him, and any possible defenses Petitioner had; 55) he testified that he investigated the case against the Petitioner; 56) counsel testified that he spoke with Petitioner, Sergeant Jenkins, and Mrs. Bruce; 57) counsel testified that he watched the video, filed for discovery and filed a Freedom of Information Act (FOIA) request on the confidential informant; 58) counsel testified that the confidential informant had about eighty years of jail time hanging over his head; 59) counsel stated that the video did not show the drug transaction; 60) counsel stated that the audio did include language such as "dove" and "green-green", which is language commonly used in drug transactions; 61) counsel testified that he did not speak to Hunter; 62) counsel stated that calling Hunter as a witness was not worth the risk of potential damage that his testimony could have caused to the defense; 63) counsel stated that one of his best arguments at trial was that Hunter and the confidential informant engaged in a drug deal rather than the Petitioner and confidential informant; 64) however, if Hunter testified that he did not sell the confidential informant any drugs, then counsel would not have had that argument as part of his defense; 65) counsel stated that he and Petitioner discussed whether or not to call Mrs. Bruce and/or Hunter as witnesses and they decided together not to; 66) counsel testified that his trial strategy focused on discrediting the confidential informant; and he stated that he felt he did an effective job of doing that; 67) counsel further testified that it was critical in this case to preserve the last closing argument; 68) counsel testified that the confidential



11

informant's testimony and the audio/video were the key pieces of evidence against Petitioner; 69) counsel further stated that Sergeant Jenkins' testimony was damaging because most jurors naturally believe police officers; 70) counsel testified that he did not have a witness that could refute the confidential informant with any believability; 71) therefore, counsel opined that it was better to maintain the last closing argument; 72) counsel testified that he interviewed Mrs. Bruce prior to trial and he questioned her about what she saw and could testify to, and he did not feel comfortable putting her on the stand because she would not tell him what she would testify to; 73) he further testified that he did not think she would make a very credible witness because she was Petitioner's girlfriend; 74) counsel testified that there was no doubt that Petitioner was at the house all day on the day of the incident; 75) counsel testified that he did not recall asking Mrs. Bruce about her prior record; 76) counsel stated that it was not a concern of his since she was not going to testify; 77) counsel testified that, even in retrospect, he would not call Mrs. Bruce as a witness; 78) he testified that he and Petitioner discussed this and put together the trial strategy that he employed during the trial; 79) counsel testified that Mrs. Bruce told him that the confidential informant was lying; 80) he stated that he asked her what she was basing her statement on and she said that the confidential informant's reputation was known in the community; 81) counsel testified that he was unable to discern whether or not Mrs. Bruce was on the porch or in the house; 82) he testified that he also did not know if she saw everything that transpired that day or not because she was in the house for at least part of the time; 83) counsel testified that both the Petitioner and Mrs. Bruce had glowing remarks to make about his performance at trial; 84) he testified that they never raised any concerns about his representation; 85) counsel testified that Mrs. Bruce told him that the confidential informant lied about the kids being at the house; 86) counsel testified that he did not think that it was important



whether or not the kids were present; 87) he testified that the incident occurred between one and two o'clock in the afternoon on September 5, 2001; 88) he testified that he could not remember whether or not the confidential informant and Petitioner went to school together; 89) counsel testified that he did not object to the Solicitor's statements in his closing because that was why he preserved the last argument; 90) he would have a chance to speak last and set the record straight without drawing any unnecessary attention to any specific statement the Solicitor made; 91) he testified that the last closing argument allowed him an opportunity to tell the jury what was and was not true; 92) he testified that not making those objections would have been critical had he presented witnesses and lost the last closing argument; 93) finally, counsel testified that he felt that everything a Solicitor says in a trial is prejudicial; 94) however, he stated that he did not believe what the Solicitor said rose to the level of improper bolstering;

95) the Petitioner's testimony was not credible; 96) counsel's testimony was credible; 97) Petitioner completely failed to carry his burden of proof; 98) there was no evidence of ineffective assistance of counsel; 99) to the contrary, counsel's representation was more than reasonable within the required standards; 100) counsel met with Petitioner on numerous occasions; 101) counsel discussed the charges against Petitioner, the possible defenses to those charges, and the evidence the state had against him; 102) counsel conducted an investigation into the charges against Petitioner; 103) counsel met with Mrs. Bruce; 104) counsel interviewed Sergeant Jenkins; 105) counsel requested, received, and reviewed discovery; and he made an FOIA request on the confidential informant; 106) counsel reviewed the video and the audio of the drug buy; 107) throughout his representation, counsel kept Petitioner well informed and involved; 108) counsel and Petitioner, together, developed a trial strategy and prepared a reasonable defense; 109) the evidence before the



Court indicates that Petitioner and counsel decided not to call Mrs. Bruce or Hunter as witnesses; 110) in fact, the evidence before the Court indicates that Petitioner and counsel, together, decided not to call any witnesses so they could preserve the last closing argument; 111) such a strategy was reasonable and common in criminal cases in this state and the Court found no fault in counsel employing such a strategy; 112) counsel was extremely well prepared to represent Petitioner at trial; 113) counsel was reasonable in his belief that he needed to focus on discrediting the confidential informant; 114) the evidence before the Court shows that counsel effectively did so; 115) counsel was not ineffective for failing to object to statements made by the Solicitor; 116) counsel had preserved the right to present last closing argument and was able to address her statements at that time; 117) additionally, counsel was reasonable in his belief that drawing unnecessary attention to a statement by objecting to it could potentially be harmful for his client; 118) furthermore, Petitioner presented no evidence that the Solicitor's statements were even unduly prejudicial; 119) as counsel stated, everything the Solicitor says is at least somewhat prejudicial;

120) Petitioner was properly indicted by the grand jury; 121) his indictments were true billed and contain the necessary information; 122) furthermore, defects in an indictment do not affect subject matter jurisdiction; 123) the video and audio of the transaction were introduced into evidence at Petitioner's trial; 124) Petitioner claims the video does not show a drug buy; 125) the Court finds that the evidence introduced became a question for the jury; 126) furthermore, counsel certainly offered every other explanation he could to the jury; 127) there is no basis for overturning Petitioner's conviction just because the video does not clearly show a drug buy; 128) there was evidence that the police as is standard in these cases searched the confidential informant; 129) Petitioner is not entitled to relief under PCR simply because the search was not conducted on video; and 130) Petitioner did



not establish any constitutional violations or deprivations that would require the court to grant his application. (R.pp. 286-294).

Substantial deference is to be given to the state court's findings of fact. <u>Evans v. Smith</u>, 220 F.3d 306, 311-312 (4th Cir. 2000), <u>cert. denied</u>, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], <u>cert. denied</u>, 532 U.S. 925 (2001); <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir. 2000)(en banc), <u>cert. denied</u>, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). <u>See also</u> <u>Fisher v. Lee</u>, 215 F.3d 438, 446 (4th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1095 (2001); <u>Frye v. Lee</u>, 235 F.3d 897, 900 (4th Cir. 2000), <u>cert. denied</u>, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984); <u>Pruett v. Thompson</u>, 996 F.2d. 1560, 1568 (4th Cir. 1993), <u>cert. denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d. 1092, 1100 (4th Cir. 1990), <u>cert. denied</u>, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits[5] by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, 120 S.Ct. 1495 (2000). <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see</u>

---

[5]<u>See</u> Section I, <u>supra</u>.



also <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694. In <u>Strickland</u>, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Mazzell v. Evatt</u>, 88 F.3d 263, 269 (4th Cir. 1996).

Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. <u>Smith v. North Carolina</u>, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].



### a. Failure to call a witness

Petitioner first argues that his counsel was ineffective for failing to call his girlfriend as a witness at his trial. As previously discussed, this was the issue raised by both counsel and the Petitioner <u>pro</u> <u>se</u> in the PCR appeal and rejected by the South Carolina Supreme Court. <u>See</u> discussion, <u>supra</u>.

The record reflects that, at the PCR hearing, Petitioner and Mrs. Bruce (who was his girlfriend at the time of the drug buy) testified that Mrs. Bruce was present at the time of the alleged drug buy, that she did not see Petitioner sell any drugs, that she told Petitioner's counsel she was a witness, that she attended Petitioner's trial, was available to testify, and that Petitioner's counsel chose not to call her as a witness. (R.pp. 208-214, 218-223, 238-246). Petitioner's trial counsel testified that he met with Petitioner and Mrs. Bruce on a few occasions, that Mrs. Bruce was inside the house at certain times when the Petitioner and the confidential informant were on the porch, that she was Petitioner's girlfriend at the time which certainly could have made her appear to be a biased witness, that part of the trial strategy was to not call witnesses so he could have the last argument to the jury, that Petitioner agreed with this trial strategy, that after the prosecution rested he and Petitioner discussed whether to call Mrs. Bruce and they decided not to because counsel had done a good job discrediting the confidential informant; that Petitioner never complained about this strategy until his APCR, and that even in hindsight, counsel would not go back and call Mrs. Bruce as a witness. (R.pp. 253-255, 264).

Although Petitioner offers his speculation that Mrs. Bruce's testimony would have affected the outcome of the case, this offering is insufficient to show his counsel was ineffective. While the decisions of trial counsel are always subject to being second guessed with the benefit of



hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. <u>Strickland</u>, 466 U.S. at 689.  There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. <u>Id</u>. at 688-689; <u>Bunch v. Thompson</u>, 949 F.2d 1354 (4th Cir. 1991), <u>cert. denied</u>, 505 U.S. 1230 (1992); <u>Horne v. Peyton</u>, 356 F.2d 631, 633 (4th Cir. 1966), <u>cert. denied</u>, 385 U.S. 863 (1966); <u>Burger v. Kemp</u>, 483 U.S. 776 (1987); <u>see also</u> <u>Harris v. Dugger</u>, 874 F.2d 756, 762 (11th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.].

The PCR judge found Petitioner's testimony to not be credible, counsel's testimony to be credible, and that counsel had a sound trial strategy, and the undersigned can find no reversible error in this record.  <u>Cf</u>. <u>United States v. Vargas</u>, 871 F.Supp. 623, 624 (S.D.N.Y. 1994)[Relief denied where Petitioner failed to show, <u>inter alia</u>, that counsel's decision not to open up such a witness to cross examination was ineffective assistance]; <u>Smith v. Kenna</u>, 309 Fed.Appx. 68, 72-73 (8th Cir. 2009)[No ineffective assistance where there is no showing that failure to call a witness affected the outcome of the trial]. Nor has Petitioner shown the necessary prejudice with regard to this claim. <u>Evans</u>, 220 F.3d at 312; <u>Williams v. Taylor</u>, <u>supra</u>; <u>Strickland v. Washington</u>, <u>supra</u>; <u>Beaver</u>, 93 F.3d at 1195; <u>Bassette v. Thompson</u>, <u>supra</u>.  <u>See also</u> <u>Moss</u>, 286 F.3d at 864-865; <u>Zettlemoyer</u>, 923 F.2d at 298.

This issue should be dismissed.

**b. Failure to object to Prosecutor's vouching of the credibility of a State's witness.**

Petitioner testified at his PCR hearing and contends here that the Solicitor was



vouching for the confidential informant.  (R.pp. 223-225, 227-228).  Under South Carolina law, the solicitor cannot vouch for the credibility of a witness by expressing or implying his personal opinion as to the witnesses' truthfulness.  Improper vouching occurs when the solicitor "places the government's prestige behind a witness by making explicit personal assurances of a witness' veracity, or where a prosecutor implicitly vouches for a witness' veracity by indicating information not presented to the jury supports the testimony."  State v. Shuler, 545 S.E.2d 805, 818 (S.C. 2001).  However, as long as the solicitor stays within the record and its reasonable inferences, she has the right to give her version of the testimony and comment on the weight and credibility of the witnesses during the trial.  See State v. Raffaldt, 456 S.E.2d 390, 392 (S.C. 1995)[where case was essentially a swearing contest, it was proper for solicitor to comment on the credibility of the witnesses by contrasting the testimony of the defendant and the state's witnesses]; State v. New, 526 S.E.2d 237 (S.C.Ct.App. 1999)[solicitor's argument that state's witness had nothing to gain because he would be considered a rat in prison for testifying was a reasonable comment on the credibility of witnesses in the case, especially where believability was a crucial issue in the trial].

 At trial, Officer Steven Jenkins testified that eighty-five (85%) of his work with drugs is through confidential informants and that sometimes you have to use someone associated with drugs to get a drug dealer.  (R.pp. 30-31).  Officer Jenkins also testified that one of the reasons someone may help them catch a drug dealer is to gain some favorable consideration of their own pending drug charges, that the confidential informant in this case approached them about helping, they met with him at the jail, that he was in tears when talking with them, and that he appeared sincere in wanting to make a change in his life.  (R.pp. 30-32).  Jenkins testified that the confidential informant had worked with them on other drug cases, and that they always search the confidential informants,



including the one in this case, and their vehicles prior to any drug set ups. (R.pp. 33, 35, 39). Officer Kenneth Washington also testified that the confidential informant approached them seeking help to get off drugs and to assist them with getting drug dealers off the streets, and that they searched the confidential informant in this case. (R.pp. 69-70, 73).

In her closing argument, the Solicitor argued that in order to catch drug dealers, the police often have to have someone who is involved in drugs to help, and that it is not uncommon for the police to drop charges against someone who helps them make a case. She noted that the confidential informant had approached the police, and that he had helped the police before and had proven himself, all of which had been testified to by the witnesses. (R.pp. 127-128). The Solicitor also stated that the officers searched the confidential informant both before and after the buy, and that this was something police officers "do all the time" and "that's the way it works." (R.pp. 128-129). The Solicitor also referred to Hunter, saying that the Defense was just trying to confuse the jury by making them think he was the dealer, and that the jury knew why he was over there. (R.p129).

Respondent contends that there is nothing improper about these statements since Petitioner's counsel had attacked the credibility of the witnesses and these statements countered the attack presented at trial. (R.pp. 46-64, 73-78, 92-112). The undersigned agrees. State v. Raffaldt, supra. Additionally, the undersigned does not find that the state court's determination that the solicitor's comments were not improper was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. (R.p. 293); Evans, 220 F.3d at 312; see generally United States v. Necoechea, 986 F.2d 1273, 1279 (9th Cir. 1993)[no vouching when prosecutor argued that "if [the witness is lying, why] isn't she doing a better job of it", and stated "I submit . . . that she's not lying", as the "submit" statements were merely permissible inferences from



the record, and the prosecutor's argument that the witness was telling the truth was one he had to make to convict the defendant); <u>United States v. Livingston</u>, 21 Fed.Appx. 564, 566 (9th Cir. 2001)[no vouching where prosecutor stated "we would submit [the officer is] a decent, honest cop", and "we would submit that [the witness], when you evaluate his testimony as a whole, was truthful and credible", as the statements were prefaced by "we submit", and were book ended by statements that made it clear the credibility determination was for the jury.] Therefore, Petitioner has not shown his counsel was ineffective for failing to object to these comments. <u>Smith v. North Carolina</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

Further, even assuming <u>arguendo</u> that the comments were improper, Petitioner has still not shown that he is entitled to relief on this claim, as he has failed to show the requisite prejudice. While it is a fundamental precept of American criminal jurisprudence that a prosecutor may not do or say anything that denies a defendant due process; <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974); <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935)["He [the solicitor] may prosecute with earnestness and vigor--indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones."]; when considering whether comments by a prosecutor were improper, "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly</u>, 416 U.S. at 643). "Moreover, the appropriate standard of review for such a claim on a writ of <u>habeas</u> <u>corpus</u> is the 'narrow one of due process, and not the broad exercise of supervisory power.'" <u>Id</u>. (quoting <u>Donnelly</u>, 416 U.S. at 642). Hence, this court must consider whether the comments made so infected Petitioner's trial with unfairness as to make the resulting



21

conviction a denial of due process; see California v. Ramos, 463 U.S. 992, 998-99 (1983); and in conducting this review, such comments being undesirable or even "universally condemned" is not alone enough to warrant reversal. Darden, 477 U.S. at 180-81; see also Donnelly, 416 U.S. at 643.

In United States v. Harrison, 716 F.2d 1050 (4th Cir. 1983), cert. denied, 466 U.S. 972 (1984), the Fourth Circuit set forth the following four factors to be examined to determine whether the prosecutor's comments were so damaging as to require reversal:

(1) the degree to which remarks misled the jury and prejudiced the defendant;

(2) whether remarks were isolated or extensive;

(3) whether absent remarks competent evidence established guilt; and

(4) whether comments were deliberately placed before the jury to divert attention to extraneous matters.

Id. at 1052.

Here, after a careful review of the record pursuant to the standards set forth by the Fourth Circuit in Harrison, this court does not find that reversal is warranted in this case. The undersigned has carefully reviewed the transcript of the closing arguments, the allegations of Petitioner, the jury instructions from the court, and the memoranda of the parties, and does not find that the solicitor's comments so infected the trial with unfairness as to deny the Petitioner due process. The solicitor's comments were not such as to mislead the jury in any way, and there was competent evidence on which the jury could have established Petitioner's guilt, notwithstanding the cited remarks. Hence, applying the four-factor test employed by the Fourth Circuit Court of Appeals, even assuming arguendo that the cited comments were improper, they were not so damaging as to require reversal in this case. United States v. Harrison, 716 F.2d at 1052; California v. Ramos, 463 U.S. at 998-99.



Finally, although Petitioner speculates that the outcome may have been different if his counsel had objected, he has produced no evidence to support his assertions. Cf. Green v. State of South Carolina, 569 S.E.2d 318, 324 (S.C. 2002)[Speculation as to whether a juror wished to convict not sufficient to warrant relief]. Nor has he shown that he was prejudiced by any impropriety in the Solicitor's closing argument. Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1989)[Speculation and conjecture does not satisfy the prejudice prong of Strickland].

Accordingly, Petitioner has not shown any prejudice from these alleged deficiencies, and he has therefore failed to present evidence sufficient to show that the state court's rejection of these claims was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the law or facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. This claim should be dismissed.

**c. Failure to object to indictment prior to trial**

In his final claim, Petitioner contends that his counsel was ineffective for failing "to object, and pay attention to a defective, no bill, or true bill indictment, prior to trial; thus, failed to object to material perjured testimony offered by officer (Sgt. Steve Jenkins) to Grand Jury during subject matter jurisdiction hearing, to obtain an indictment for Petitioner." See Petition, p. 9. As previously discussed, this issue was considered and rejected in Petitioner's APCR. See Petition, p. 9; see also (R.pp. 229, 285, 293). The record also reflects that the South Carolina Court of Appeals remanded the case during the direct appeal for a hearing to address whether the indictment was true-



billed, even though the grand jury foreman had signed and dated it.  State v. Bruce, Unpub. Op. No. 2004-UP-223 (S.C.Ct.App. 2004).  A hearing was conducted, and on December 3, 2004, Judge J.C. Nicholson filed an order in which he found the indictments had been properly "true-billed".  See Order filed December 3, 2004.

Since a hearing was held on the matter and the state court found the indictments were properly "true-billed", the Petitioner has not shown any prejudice from counsel's failure to object to the indictment.  Cf. Hough v. Anderson, 272 F.3d 878, 898 (7th Cir. 2001)[ineffective assistance claims based on failure to object is tied to the admissibility of the underlying evidence; if evidence admitted without objection was admissible, then the complaint fails both prongs of the Strickland test, as counsel's performance is not deficient and there is no prejudice].  Furthermore, Petitioner is attempting to argue that the state court misapplied state law in his case.  "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions;" Estelle, 502 U.S. at 67-68 ["federal habeas corpus relief does not lie for errors of state law"]; and deficiencies in state court indictments are therefore "not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).

Here, in addition to the state appeals court, the state PCR court rejected Petitioner's allegation with regard to the indictment issue; (R.pp. 288, 292-293); and Petitioner has failed to present evidence sufficient to show a federal violation so as to have this claim considered by this Court.  Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented



in the state court proceeding]. Petitioner has also not shown any deficiency in his indictment which made his trial so egregiously unfair as to amount to a deprivation of any federal right. <u>Ashford</u> 780 F.2d at 407. Therefore, this issue is without merit and should be dismissed.

As for Petitioner's claim that the officer offered perjured testimony before the Grand Jury, Petitioner testified at his PCR hearing that Sergeant Jenkins lied and that counsel "should have maybe objected to that". (R.p. 229). However, Petitioner has not shown that the officer gave perjured testimony to the Grand Jury. <u>See</u> (R.pp. 229-233, 293). Petitioner has provided no evidence to show that the officer testified to knowingly, false matters, nor has he shown any deficiency in his indictment which made his trial so egregiously unfair as to amount to a deprivation of any federal right. <u>Ashford</u> 780 F.2d at 407. This claim is without merit and should be dismissed.

<strong>Conclusion</strong>

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 22, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

